IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ERIC AND TRACY EHMANN,

                Plaintiffs,

    v.

NICHOLAS AND TRISH METROPOLUS,
d/b/a Home of The Hodag Wear, d/b/a
Metro Screenprinting and Embroidery,

                Defendants.

ORDER

19-cv-586-wmc

---

With the trial in this case set for trial Monday, March 15, 2021, and the final pretrial conference ("FPTC") to take place tomorrow, March 5, at 10:00 a.m. via Zoom, the court issues the following preliminary rulings with respect to their respective motions *in limine*.

## BACKGROUND

*Pro se* plaintiffs Eric and Tracy Ehmann are proceeding on claims that defendants Nicholas and Trish Metropolus infringed a copyright under 17 U.S.C. §§ 501-505. Plaintiffs allege that in 2006, Tracy Ehmann created a number of original artistic designs of the mascot for the City of Rhinelander, known as the "Hodag," then registered a copyright in those Hodag logos, which consist of graphics and lettering (the "Hodag logos" or "logos"), before later transferring all of her ownership and copyright interests in the logos to her husband, Eric Ehmann. Plaintiffs do not allege in their complaint when this transfer occurred, but they were married in 2008 and sold merchandise with the Hodag logos from 2009 to 2011. However, plaintiffs do represent in their objections to defendants' proposed jury instructions that the transfer occurred by October 9, 2009.

1

Plaintiffs further allege that they discovered in 2019 that defendants were using the copyrighted Hodag logos owned by Eric Ehmann to print and sell merchandise online, as well as in defendants' store, all without Mr. Ehmann's license or permission to do so.

Through their counsel, defendants both dispute Eric Ehmann's ownership interest in any of the logos. They also allege that in or around 2007, Tracy Ehmann verbally granted them permission to use her logos in return for the satisfaction of an unpaid debt with their store. In contrast, while plaintiffs admit that Tracy Ehmann had an outstanding bill with defendants, they deny granting defendants permission to use her logos to satisfy her debt. Rather, plaintiffs allege that in the summer of 2009, Tracy presented defendants with a non-exclusive licensing agreement, which Eric Ehmann drafted, to use a different copyrighted design for a 20-foot sculpture of Rhinelander mascot ("The Hodag sculpture") for a period of two years, as satisfaction for her debt. Defendants deny ever receiving or entering into this licensing agreement.

Still, there appears to be no signed copy of any purported licensing agreement, nor of any the alleged copyright transfer agreement between Tracy and Eric Ehmann. Plaintiffs allege that these agreements and all other documents relating to plaintiffs' sales of the Hodag merchandise were lost in a flood in 2010. However, plaintiffs will seek to introduce a computerized copy of the licensing agreement they allegedly drafted in 2009, along with expert testimony from Data Narro that the metadata for the document shows it was last modified on July 23, 2009.

Plaintiffs filed an early motion for summary judgment, which the court denied because there are genuine issues of material fact as to the ownership of the logos (Dkt.

#56). Defendants never filed a motion for summary judgment.

## ISSUES FOR TRIAL

Based on the parties' past submissions in this case, which were limited, the issues for the jury to decide at trial would appear to be: (1) whether Tracy Ehmann authorized defendants to use the Hodag logos in 2007, and if so, for how long; and (2) whether Eric Ehmann is the current owner of the copyright via the alleged transfer in October 2009. However, defendants now seem to dispute the validity of the copyright itself. Specifically, in their proposed jury instruction no. 12.2.1, defendants propose to include language that the copyright interest in the Hodag logos "may have been waived/forfeited by publication without proper statutory copyright notice," and "there was a failure to publish the work in accordance with the copyright statutes." Defendants' proposed jury instructions also suggest that, at some point, Tracy may have abandoned her copyright.

Unclear is whether defendants' claims of authorized use and abandonment are based on the same set of facts as the grant of permission. Legally, these two affirmative defenses are very different, since authorized use suggests merely a nonexclusive, oral license to use the copyrighted work in a particular manner, while abandonment is a relinquishment of the copyright altogether. *See Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 760-62 (7th Cir. 2016); *Shanlian Quan v. Ty, Inc.*, 2019 WL 1281975, at *8 (N.D. Ill. Mar. 20, 2019).

Defendants have filed no related motion *in limine*, cited no authority for their assertion, nor proposed additional jury instructions on the validity issue. Moreover, the Seventh Circuit has not decided if the issue of validity should be determined by the bench

or jury. 7th Cir. Instr. 12.3.1, cmt. 1 (citing *Gaiman v. McFarlane*, 360 F. 3d 644, 648 (7th Cir. 2004), and *Pub'ns Int'l, Ltd. v. Meredith Corp.*, 88 F.3d 473, 478 (7th Cir. 1996)).

Accordingly, before the court in advance of trial, is how and in what order to address the two principal questions noted above regarding copying and Eric's standing in the case, as well as potentially, the validity of the copyright. Although Eric Ehmann's alleged current ownership of the copyright affects his standing and entitlement to damages, there appears no dispute that Tracy Ehmann was the owner of any enforceable copyright in 2007, when she allegedly abandoned her copyright and/or granted defendants permission to use the logos.

## OPINION

### A. Plaintiffs' Motions for Leave "to File Papers" (Dkt. ##110, 112)

Plaintiffs mistakenly read their deadline for filing their pretrial disclosures and documents to be February 19, rather than February 5, and accordingly filed their disclosures 3-4 days late (on February 8 and 9). Defendants oppose the motions on the ground that plaintiffs did not provide a good excuse for the late filings and ask that: (1) plaintiffs' statement about their expert witness's qualifications and experience (Dkt. #113) not be accepted; and (2) plaintiffs not be allowed to call any witnesses not identified in their initial disclosures.

Although defendants argue that it is unfair that plaintiff effectively had a few extra days to prepare their Rule 26(a)(3) disclosures, plaintiffs are proceeding *pro se*, and defendants do not seem to have suffered any real prejudice as a result of the very short delay. Although defendants state that they did not know about some of the witnesses

4

listed in plaintiffs' final disclosures, they do not develop this argument or identify any reason that plaintiffs should have named these witnesses sooner, whether under Fed. R. Civ. P. 26 or other discovery obligations.  Finally, it looks like plaintiffs' initial expert witness report did not include Erik Thompson's qualifications, but defendants never challenged the report on that ground before their own expert response deadline and have not raised the issue in a motion of their own since.

If needed, the court can address any remaining failure to disclose issues regarding plaintiffs after hearing from the parties at the FPTC.  Accordingly, the court will RESERVE ruling definitively on these motions until then.

### B. Plaintiffs' Motion to Exclude Character Evidence (Dkt. #93)

Plaintiffs seek to exclude evidence about Eric Ehmann's 20-year-old criminal convictions and history of filing civil lawsuits, and Tracy Ehmann's alleged substance abuse.  They do not provide any details about any of these things, arguing generally that such evidence is irrelevant and unduly prejudicial under Fed. Rs. Evid. 403, 608(b), and 609.

Defendants respond that they should be allowed to introduce evidence of the following to show plaintiffs' tendency to be untruthful:

- **Eric Ehmann's convictions** in 1999 for uttering counterfeit obligations or securities under 18 U.S.C. § 472, and 2002 conviction for bank fraud and misuse of social security numbers under 18 U.S.C. § 1344.

Although Eric Ehmann's criminal convictions are old, they appear to relate to fraudulent claims and documents.  Given that this case turns at least in part on documents

5

that Eric and Tracy Ehmann say once existed but were destroyed, the convictions may have more relevance than typical, although only if Eric were to take the stand, and then only for impeachment purposes. The court will discuss this further with the parties at the FPTC.

- **Evidence that Eric Ehmann made similar copyright accusations** against Rhinelander Brewing Company (he alleged that they infringed Tracy Ehmann's copyrights in their advertising) and Dave Meinert's screenprinting business, Shirts, Signs, and Designs.

No other information is provided about these lawsuits. While these previous claims of copyright infringement also *might* be relevant for impeachment purposes, defendants have provided *no* information to make that determination, including the nature of the claims, the outcome of suits, and whether they are enough to show a pattern or practice.

- **Tracy Ehmann's "substance abuse"** issues around the time she was operating her business and allegedly granted defendants permission to use the Hodag logos and presented a licensing agreement to defendants regarding a different work. Defendants also apparently intend to present testimony from Tracy's ex-husband and other, unidentified evidence of Tracy's substance abuse and financial hardship, as well as debts to defendants in an effort to show that Tracy may not remember events as they occurred and had reason to turn over the logos to defendants in payment of her debt to them.

The court is unpersuaded by defendants' argument regarding Tracy Ehmann's possible substance abuse at the time some of these events took place. Of particular concern is testimony defendants seek to introduce from her ex-husband, who it would appear could only testify that Tracy was using while he was married to her for a 3-week period. That is both too tangential *and* obviously highly prejudicial. Moreover, defendants have offered *no* evidence that Tracy Ehmann was impaired by substances *at the time* she was allegedly negotiating with them. Finally, if Tracy was too impaired in the past to recall the relevant

6

events, this would also call into question her ability to grant permission to defendants to use her logos, as well as the reasonableness of defendants' reliance on that consent. Without more, this evidence will be excluded, except to the extent plaintiffs may dispute owing money to defendants or financial hardship around the time of the alleged negotiations over use of the logos or sculpture, and even then, only as to those debts.

Accordingly, the motion is RESERVED IN PART AND DENIED IN PART as set forth above.

### C. Defendants' Eight Motions In Limine (Dkt. #98)

#### 1. Exclude hearsay testimony or references by Eric Ehmann

Defendants argue that Eric Ehmann should be barred from testifying about (or referencing in opening or closing) any conversations and events he was not a part of, including Tracy Ehmann's discussions with defendants, in which he did not take part.

Plaintiffs argue that Eric Ehmann will call Tracy Ehmann as a witness and may reference her testimony as part of his case, including opening and closing statements. However, Eric Ehmann also says that he recollects Tracy telling him about statements that she made at the time of the event in question but that she can no longer remember.

To the extent that Eric is claiming to "act as Tracy's attorney," including asking questions while she is on the stand, this motion is GRANTED. Otherwise, the rules of evidence apply, meaning that Eric Ehmann may not testify to matters outside his personal knowledge.

2. **Motion to Preclude Eric Ehmann from testifying on Tracy Ehmann's behalf or acting as Tracy Ehmann's counsel or advisor (Unopposed)**

This motion is GRANTED consistent with the ruling as to defendants' MIL No. 1 above. As defendants suggest, Eric Ehmann is not an attorney and cannot act as counsel. While both Tracy Ehmann and he may testify on direct, neither will do so in question and answer form. Of course, this still allows for clarifying questions of each other as it concerns their unique claims at the close of their direct testimony, as well as cross-examination by opposing counsel. Either may also make opening statements and closing arguments and question other witnesses on their own behalf.

3. **Preclude Eric Ehmann from correcting Tracy Ehmann's testimony**

This motion is GRANTED except to the extent that Eric Ehmann seeks to ask clarifying questions or testify to matters within his personal knowledge. In particular, Eric Ehmann may not provide testimony regarding what Tracy Ehmann told him, unless it falls into the prior consistent statement exception.

4. **Exclude testimony or references to statements from individuals not disclosed as witnesses (Unopposed)**

This motion is DENIED, since no witnesses are specified, except as it relates to plaintiffs' late-filed Rule 26(a)(3) disclosures, as discussed above, which will be discussed during the FPTC.

8

### 5. Exclude expert testimony from any of plaintiffs' witnesses *except* Data Narro

It is unclear what expert testimony, if any, defendants are concerned about. Plaintiffs' only expert appears to be Erik Thompson, the director of Data Narro, whom plaintiffs apparently disclosed on or about May 15, 2020, well in advance of their June 15 deadline. Moreover, defendants say they received a letter from Data Narro on May 29, 2020, which contained disclosures of testimony by Thompson.

This motion is GRANTED except to Erik Thompson's testimony as timely disclosed.

### 6. Exclude references to non-exclusive licensing agreement as an *original*, executed contract

There is no signed copy of the non-exclusive licensing agreement that Tracy Ehmann alleges she gave defendants in the summer of 2009 for the Hodag sculpture or image. Plaintiffs do have an unsigned copy of the agreement (Dkt. #52-2) that Eric Ehmann allegedly created on his former work computer, which he no longer has access to, but transferred to an external USB drive in December 2009 and put on another USB drive in April 2014. Plaintiffs say that the unsigned draft document is an exact copy of the signed original, and their expert will testify that the metadata for the file saved on the USB drive from 2014 shows the document was last edited in July 2009.[1]

---

[1] While defendants had moved to compel plaintiffs to produce all of their computer equipment, drives, and storage devices, the court previously allowed defendants only Data Narro's forensic copy of the two digital files that compose the licensing agreement, along with the necessary metadata, because plaintiffs' entire USB drive contained other, sensitive and private information not bearing on the issues in dispute. (Dkt. #85.)

9

Defendants seek to exclude any evidence of the agreement on the ground that no signed copy exists and the document's authenticity is in question. Defendants have not developed their argument in any detail or cited any legal authority apart from referencing Fed. R. Evid. 1003, which allows the admission of a "duplicate copy" if there is no genuine question about its authenticity.

Obviously, there is a genuine dispute about the agreement's authenticity here. Moreover, plaintiffs did not mention an alleged, signed licensing agreement in their early motion for summary judgment, but apparently offer it now to show that Tracy Ehmann had an alternative means of settling her debt with defendants involving artwork separate from the logos at issue in this case. The parties can certainly testify as to whether they signed any licensing agreement, and what the agreement contained, but this does not answer whether the unsigned copy of the agreement may be admitted into evidence, even if plaintiffs' expert says that the particular copy was not edited after 2009. While the expert's testimony would tend to show that an agreement was created in 2009, it offers no insight as to the parties actually entering into that agreement. Still, the court will RESERVE pending further input from the parties because the alleged licensing agreement was non-exclusive and is not required to be in writing. 17 U.S.C. §§ 101, 204(a).

### 7. Exclude prior court orders and decisions as legal conclusions

Based on their experience at Nicholas Metropolus's deposition, defendants are concerned that plaintiffs will seek to introduce as evidence the court's previous orders—specifically, any summary of the facts of this case. Plaintiffs have not responded to this

motion, but they list the general categories of pleadings, affidavits, motions, "rulings and orders in this case" as potential exhibits. (Dkt. #111 at 3.) All such documents will be excluded from admission or reference except as they represent a prior statement by an opposing party or are otherwise permitted solely for impeachment purposes. Specifically, court orders may not be submitted as exhibits because they are not evidence. If either party believes that the court should take judicial notice of a fact or include a statement of law in the jury instructions, they should indicate that in writing *to the court*. The motion is GRANTED as set forth above.

### 8. Exclude evidence of plaintiffs' actual damages

Defendants argue that plaintiffs have not provided an accounting of any actual damages (e.g., decrease in market value, lost profits, or licensing fee) during discovery as required under Fed. R. Civ. P. 26(a)(1)(A)(iii). Plaintiffs stated in their initial disclosures that they were unable to quantify their damages before discovery, but have apparently never supplemented their disclosures and Tracy Ehmann testified further at her deposition that she had did not know her damages *and* had no way of calculating them. Plaintiffs do not respond to these arguments, stating only that if the court excludes evidence of actual damages, it should also preclude defendants from presenting evidence related to its sales of Hodag logos because Nicholas Metropolus testified that he does not have this information. However, it seems clear from plaintiffs' proposed jury instructions (included within their opposition to defendants' proposed instructions) that they intend to seek statutory damages.

11

This motion will be GRANTED as essentially unopposed.

ORDER

IT IS ORDERED THAT:

1. Plaintiffs' Motions for Leave "to File Papers" (Dkt. ##110, 112) is RESERVED.

2. Plaintiffs' Motion to Exclude Character Evidence (Dkt. #93) is RESERVED IN PART AND DENIED IN PART as set forth above.

3. Defendants' Motion In Limine (Dkt. #98) is GRANTED IN PART, DENIED IN PART AND RESERVED IN PART as set forth above.

Entered this 4th day of March, 2021.

                                                BY THE COURT:

                                                /s/

                                                WILLIAM M. CONLEY
                                                District Judge