IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ERIC and TRACY EHMANN,

                    Plaintiffs,

    v.

                                           OPINION & ORDER

NICHOLAS and TRISH METROPULOS,
dba Home of The Hodag Wear,                               19-cv-586-wmc
dba Metro Screenprinting and Embroidery,

                    Defendant.

---

Plaintiffs Eric and Tracy Ehmann claimed copyright ownership in a number of original artistic designs of the "Hodag," the mascot of Rhinelander, used by defendants Nicholas and Trish Metropulos to print and sell merchandise online and in their store. Specifically, plaintiffs alleged that in 2006, Tracy Ehmann created and registered a copyright in the Hodag logos before later transferring all of her ownership and copyright interests in those logos to her husband, Eric Ehmann. Plaintiffs further alleged that they discovered in 2019 that defendants were using the same Hodag logos without license or permission to do so. Defendants disputed Eric Ehmann's ownership interest and alleged that in or around 2007, Tracy Ehmann had verbally granted them permission to use her logos in return for satisfaction of her unpaid debt with their store.

Following a two-day trial, the jury returned a unanimous verdict in favor of defendants, finding that they proved by preponderance of the evidence that Tracy Ehmann granted them an implied license to use the Hodag logos on merchandise sold at retail. (Jury Verd. (dkt. #168).) The court entered judgment in favor of defendants the following day, March 17, 2021. (Judg., (dkt. #169).). Defendants now ask the court to award them $46,988.95 in

attorneys' fees and $7,165.30 in costs as the prevailing party in a copyright infringement lawsuit under 17 U.S.C.A. 505.  (Dkt. #171 and #174.)

For the reasons that follow, the court will grant defendants' motion for attorney's fees in the amount of $24,175.25, as well as grant in part and deny in part defendants' bill of costs in the amount of $2,166.30 in costs, for a total award of $26,341.55.

OPINION

I.   **Attorney Fees**

A.  **Award of Fees**

Under the Copyright Act, a district court "may allow the recovery of full costs. . . and may also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  The Act's language "clearly connotes discretion, and eschews any 'precise rule or formula' for awarding fees." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533, 534 (1994)).  However, a district court's discretion is limited by two principles. *Moffat v. Acad. of Geriatric Physical Therapy*, No. 15-CV-626-JDP, 2017 WL 4217174, at *1 (W.D. Wis. Sept. 20, 2017).  First, "a district court may not 'award[ ] attorney's fees as a matter of course'; rather, a court must make a more particularized, case-by-case assessment." *Kirtsaeng,* 579 U.S. at 202 (quoting *Fogerty*, 510 U.S. at 533).  Second, the court "may not treat prevailing plaintiffs and prevailing defendants any differently." *Id*.  Defendants should be "encouraged to litigate [meritorious defenses] to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id*. (quoting *Fogerty*, 510 U.S. at 527).  Thus, the Copyright Act "treats both sides equally and allows an award in either direction." *Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008).

2

Within these two limiting principles, a district court may consider several discretionary factors: (1) frivolousness of claims or defenses; (2) motivation of the parties; (3) objective unreasonableness (both in the factual and in the legal components of the case); and (4) the need in particular circumstances to advance considerations of compensation and deterrence. *Kirtsaeng*, 579 U.S. at 202 (quoting *Fogerty*, 510 U.S. at 534, n.19); *Timothy B. O'Brien LLC v. Knott*, 962 F. 3d 348, 350 (7th Cir. 2020). This is not an exclusive list of factors because the district court has wide discretion to consider the totality of circumstances. *Id*.

In the Seventh Circuit, "the two most important considerations . . . 'are the strength of the prevailing party's case and the amount of damages or other relief the party obtained.'" *Klinger v. Conan Doyle Estate, Ltd.*, 761 F.3d 789, 791 (7th Cir. 2014) (quoting *Assessment Techs. of Wis., LLC v. WIREdata, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004)); *see also Moffat*, 2017 WL 4217174, at *2 (quoting same). This means that "[i]f the case was a toss-up and the prevailing party obtained generous damages, or injunctive relief of substantial monetary value, there is no urgent need to add an award of attorneys' fees." *Klinger*, 761 F.3d at 791 (quoting *Assessment Techs.*, 361 F.3d at 436). On the other hand, if "the claim or defense was frivolous and the prevailing party obtained no relief at all, the case for awarding attorneys' fees is compelling." *Id*.

In particular, the Seventh Circuit affords "defendants who prevail against copyright claims a 'strong presumption' that they are entitled to attorneys' fees." *Timothy B. O'Brien*, 962 F. 3d at 350 (quoting *Assessment Techs.*, 361 F.3d at 437); *see also Klinger*, 761 F.3d at 791 (same). This rule avoids forcing a defendant to enter into "a nuisance settlement" and abandon meritorious defenses. *Klinger*, 761 F.3d at 791 (quoting *Assessment Techs.*, 361 F.3d at 437); *Moffat*, 2017 WL 4217174, at *2. With this analytical framework in mind, the court turns to the relevant discretionary factors. However, because that presumption is not dispositive, the

3

remaining factors require analysis. *See O'Brien*, 962 F.3d at 351 ("[O]ur caselaw has never held that the strong presumption was insurmountable; rather, we have consistently required a fact-specific, case-by-case inquiry.").

### 1.  Strength of the Parties' Respective Positions

Defendants were obviously the prevailing party at trial because the copyright claim at the heart of this case was decided in their favor, and having made no affirmative recovery, defendants are entitled to a presumption favoring an award of their fees under the Seventh Circuit's guidance.  The strength of plaintiffs' case is also a factor that weighs *slightly* in favor of awarding fees to defendants.  At trial, the parties agreed that:  (1) the Hodag logos are the subject of a valid copyright covering the images used by defendants; (2) one of the plaintiffs owns the copyright; and (3) defendants copied protected expression in or prepared derivative works based on the copyrighted work.

Accordingly, the only issue at trial was whether defendants were authorized to use the copyrighted work.  Plaintiffs' position was that Tracy Ehmann provided defendants with a limited license agreement on May 1, 2009, for the use of a 2-D rendering of her copyrighted, 3-D Hodag statue for satisfaction of an undisputed debt, but that defendants then overreached that agreement and used other, unauthorized copyrighted designs.  Defendants denied ever executing a licensing agreement for the 2-D rendering, which they already had access to through the Rhinelander Area Chamber of Commerce, and alleged instead that Tracy Ehmann had granted them an implied, verbal license to use the copyrighted Hodag logos to satisfy her unpaid debt.  Considering this one question -- whether plaintiff Tracy Ehmann granted defendants a limited license to use a 2-D rendering or an implied, unlimited license in the copyrighted work generally -- the jury answered in defendants' favor.

4

Although plaintiffs' claims were certainly facially plausible, their case was substantively weak because they had little evidence to support their assertion that defendants exceeded a valid, limited 2009 license, including no signed copies of key documents or witnesses to corroborate Tracy's account, however credible she was on the stand.  Plus, plaintiffs Tracy and Eric Ehmann both testified that the signed, limited license agreement *and* all of the documents related to Tracy's supposed conveyance of her copyright interests to Eric were destroyed in a flood in 2010.

Although plaintiffs were able to present a copy of a computer file with an unsigned version of the licensing agreement that the parties allegedly executed, their own expert testified that the agreement had been edited in July 2009, *after* the document allegedly went into effect in May 2009.  Defendants also presented persuasive evidence that the 2-D rendering was useless to them because they could not screenprint it on shirts and other merchandise, *and* they already had access to nearly identical trademarked logos as a member of the Rhinelander chamber of commerce, who commissioned Tracy to produce that rendering for its members use.  Finally, defendants correctly pointed out that the two cease and desist letters sent by Eric Ehmann to defendants approximately 10 years later did not mention the alleged licensing agreement.   Combined with Eric's somewhat confusing testimony, which was less credible than Tracy's, the jury obviously accepted defendants' version of events.

Still, the evidence that defendants presented in support of their claim that Tracy Ehmann gave them a sweeping verbal permission to use her logos to satisfy an outstanding debt was also largely limited to their own testimony.  Specifically, defendants testified that: (1) Tracy approached them in the second week of February 2008, stating that she was

leaving town because she was upset over the end of her marriage and the closing of her Hodag gallery; and (2) defendants could have her Hodag Logos for their own use in exchange for satisfaction of her $300-$400 outstanding debt to defendants' store. Plaintiffs unsuccessfully countered that Tracy Ehmann had no reason to be distressed in February 2008 because she had divorced her then husband the prior year and entered a new relationship with Eric Ehmann in August 2007. Although the jury did not believe plaintiffs' version of events, defendants bear some responsibility for this lawsuit, having failed to document Tracy's supposed unqualified grant of a license in any writing, much less one that clearly specified ownership and subsequent use of the copyrighted Hodag logos.

Even considering defendants' own, inconsistent evidence and failure to document the supposed sweeping license, the court finds that this factor tips slightly in favor of defendants because the jury ultimately credited defendants' testimony and additional evidence regarding the 2-D rendering over plaintiffs' testimony.

### 2. Other Factors

Defendants also contend that this lawsuit was motivated by plaintiffs' desire to achieve financial gain from a copyright that they knew Tracy had forfeited. In support, defendants rehash the same evidence as above and discuss evidence not admitted at trial regarding Eric Ehmann having made similar, unfounded copyright claims against Rhinelander Brewing Company, Shirt Signs & Designs, and the Rhinelander Area Chamber of Commerce. Although plaintiffs have chosen not to respond further to defendants' accusation, there is little actual evidence suggesting that plaintiffs' motivation regarding the enforcement of their copyright interests was improper, and the court declines to place any weight on this factor.

However, defendants point to two ways in which plaintiffs inflated legal costs.  First, they argue that defendants were forced to hire an expert to challenge the legitimacy of the unsigned licensing agreement that addressed a wholly different copyrighted design than the logos at issue.  Second, Eric Ehmann impeded and put a premature end to the January 13, 2020, deposition of Tracy Ehmann with numerous arguments and baseless objections.

While defendants' expenditure on its own rebuttal expert was largely unnecessary given plaintiffs' expert agreed the timing of the license agreement did not hold up, defendants correctly point out that Eric Ehmann's improper conduct during the prosecution of plaintiffs' case significantly delayed the discovery process and required court intervention.  Indeed, after reviewing the deposition transcript, Judge Crabb granted defendants' request to retake Tracy Ehmann's deposition outside the presence of Eric Ehmann, who was instructed not to communicate with Tracy Ehmann during the deposition, including during questioning or breaks.  (Ord. (dkt. #55) 3).  Moreover, Ehmann chose not to respond to defendants' arguments regarding his conduct, which the court agrees was improper, wasteful, and unnecessarily costly for defendants.  Therefore, at least plaintiff Eric Ehmann's overall litigation conduct weighs in favor of awarding attorney fees.  *See Riviera Distributors*, 517 F.3d at 929 ("The party responsible for creating excessive legal costs must bear them itself in the end."). Even this is tempered in part by Eric's *pro se* status and obvious lack of objectivity.

On balance, then, the discretionary factors favor granting defendants' motion for attorney fees, and certainly do not overcome the presumption in favor of such an award.  The court turns now to the question of the *amount* of fees.

7

## B.  Amount of Attorney Fees

The basic approach to evaluating reasonable fees is the lodestar approach, in which the court considers whether the attorney's hourly rate and the hours spent are reasonable. Defendants seek an award of $46,988.95, representing $45,626.50 in attorneys' fees and $1,362 for out-of-town travel, copy, and process services.[1]  In support of their motion for fees, defense counsel have submitted time records showing that Attorney Jeremy Gill and his associates, Patrick McDonald and Beau Krueger, spent a total of 339.10 hours on defendants' case, for which they seek $145 per hour for Gill's time and $130 per hour for McDonald's and Krueger's time.  (Fee pet. (dkt. #173-1).)  Plaintiffs do not object to the hourly rates, the number of hours charged, *or* the additional copying and process server fees.  Instead, they point out that all of defendants' attorney fees and costs have been covered by their general liability insurance policy.

The court finds the number of hours expended to be reasonable considering that this case proceeded to a jury trial, and the attorneys' hourly rates are more than reasonable given the market rate for similarly skilled attorneys in the community.  The court does not find it consequential that an insurance company may or may not have paid for the cost of the defense in this case.  Plaintiffs have provided no authority to suggest that the presumption of awarding fees to defendants who prevail against copyright claims without any recovery is somehow weakened because an insurance company paid the defense costs or stands in defendants' shoes seeking a subrogated recovery.

---

[1] While the travel, copy and process services are costs, defendants have included them along with their request for fees even though they filed a separate bill of costs, presumably because most of these particular costs relate to the attorneys' travel.  Because the Copyright Act permits the prevailing party to recover their full costs, 17 U.S.C. § 505, and the parties agree that they are reasonable and appropriate, they will be included as part of the award under § 505.

Although this court has suggested that the relative wealth of the parties may be taken into consideration under the right circumstances, plaintiffs have not introduced evidence of their own personal resources.  *See Moffat*, 2017 WL 4217174, at *4 ("[T]he court will not simply assume that [plaintiffs] cannot afford to pay [defendant's] fees because they are individuals rather than business entities.").  However, the court does feel compelled to reduce the size of the fee award in light of plaintiffs' *pro se* status, strength of the copyright itself, and apparent sincerity of Tracy Ehmann, who likely would have resolved this matter sooner but for Eric's ill-advised, "bull in a china shop" approach.

Finally, the court will make an adjustment to reflect defendants' share of responsibility for the failure to settle the licensing issue up front with a clear written contract.  *See Moffat*, 2017 WL 4217174, at *7 (finding similar and reducing fees accordingly) (citing *Kirtsaeng*, 579 U.S. at 202, as support for considering "the need in particular circumstances to advance considerations of compensation and deterrence")).  Both sides bear responsibility for this particular failure, although plaintiff Eric Ehmann's conduct of this case also warrants deterrence.  *Id.*  Therefore, to provide an appropriate incentive for parties to resolve copyright ownership issues in advance, and to provide an appropriate deterrent for failing to do so, the court concludes that it is appropriate to reduce defendants' fee award in this case by one-half.  Accordingly, the court will award defendants' attorney fees in the amount of $22,813.25 and $1,362 for out-of-town travel, copy, and process services, for a total of $24,175.25.

## II.   Costs

This leaves the question of an award of costs.  Defendants have submitted a bill of costs and seek to recover $7,165.30, which includes $1,557.55 for obtaining deposition transcripts, $608.75 in witness fees, and $4,999 for copying the digital computer files of the alleged license

agreement and analyzing the metadata contained in it.  (Dkt. #174.)  Plaintiffs object to all of these costs, arguing that they were unnecessary and unreasonably high.  (Dkt. #177 at 2.)  For the reasons below, the court sustains plaintiffs' objections only with respect to the digital copying, resulting in an award of $2,166.30 for the costs of deposition transcripts and witness fees.

### A.  Deposition transcripts

Plaintiffs argue that defendants unnecessarily ordered the deposition transcripts of Nicholas Metropulos and Tracy Ehmann, when in fact plaintiffs provided defendants with a courtesy copy of Metropulos's deposition transcript on the day they received it and defendants have failed to explain why they needed the transcripts.  The court is satisfied that defendants acted reasonably in obtaining transcripts of Ehmann's and Metropulos's depositions for use in responding to plaintiffs' motion for summary judgment, preparing Metropulos for his testimony at trial, and cross examining Tracy Ehmann at trial.  *See* 28 U.S.C. § 1920(2) (cost of printed or electronically recorded transcript is recoverable if it is "necessarily obtained for use in the case"); *Nat'l Org. for Women, Inc. v. Scheidler*, 750 F.3d 696, 698-99 (7th Cir. 2014) ("[N]ecessarily" means "no more than that the transcripts or copies be reasonably and prudently obtained—which depends on how things seemed when the expenditures were made, without benefit of hindsight.").

### B.  Witness fees

Similarly, defendants seek to recoup $608.75 in witness fees (a $40 daily attendance fee and mileage costs) paid in advance to the following witnesses:  Lauren Sacket, director of the Rhinelander Chamber of Commerce; David Meinnert, owner of Shirts, Signs & Designs; and Sean Quellos, forensic lab manager and senior examiner at Digital Forensics Corporation.

Sackett was expected to testify to defendants' permitted use of the Chamber's Hodag logo, and Meinnert was expected to testify about his use of the chamber's logo and accusations of copyright infringement that Eric Ehmann previously made against him.   Quellos was defendants' expert witness who prepared a report on his examination of the file of the purported licensing agreement provided by plaintiffs.

Plaintiffs object to defendants' request for witness fees on the ground that none of these witnesses appeared at trial.  However, defendants explain that Quellos's testimony would have been cumulative given concessions made at trial by plaintiffs' expert witness, and Sacket's and Meinhert's testimony would ultimately have had limited relevance in light of certain evidentiary rulings made by the court.

Witness fees are expressly authorized by 28 U.S.C. § 1920(3).  Because the court finds that the testimony of Quellos, Sacket, and Meinhert was reasonably necessary to defendants' case at the time the witnesses were subpoenaed, it does not matter that defendants never called the witnesses at trial.  *See Dishman v. Cleary*, 279 F.R.D. 460, 466 (N.D. Ill. 2012) ("Where service on a witness is reasonable at the time, witness fees advanced will be awarded.").  The court also finds that the amounts advanced by defendants to secure their testimony at trial was reasonable in light of the statutory minimum and small allowances for travel.  *See id.*; 28 U.S.C. § 1821(b) ("A witness shall be paid an attendance fee of $40 per day for each day's attendance."); 28 U.S.C. § 1821(2) (citing 5 U.S.C. § 5704 for allowable mileage costs).

### C.  Computer file

Finally, defendants submitted an invoice from Digital Forensics Corp. for a "Phase 1 examination – set fee cost" $4,999 (dkt. #175-3), which they say includes copying the computer file and its metadata and "analyzing the same" (dkt. #178 at 9).  Plaintiffs object to

11

the cost as unreasonably high, especially as compared to the $650 that plaintiffs paid their expert to analyze plaintiffs' hard drive and two relevant digital files, produce a full report, and testify at trial.

A court may tax as costs any fees related to the copying of any materials "necessarily obtained for use in the case."  28 U.S.C. § 1920(4).  Specifically, defendants point this court to its earlier decision in *Split Pivot, Inc. v. Trek Bicycle Corp.*, 154 F. Supp. 3d 769, 777-80 (W.D. Wis. 2015) (citing *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012); *Colosi v. Jones Lang LaSalle Americas, Inc.*, 781 F.3d 293 (6th Cir. 2015); *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320 (Fed. Cir. 2013)).  In *Split Pivot*, this court held that § 1920(4) authorizes shifting of costs for the electronic assignment of Bates stamping, shipping and delivery of electronic documents, native file and email conversion, TIFF image creation and conversion (the agreed-upon default format for production of ESI), as well as the imaging of metadata and hard drives.

While the court agrees that the cost of copying the digital files and metadata in this case are recoverable under § 1920(4), defendants have not shown what part of the "Phase I examination" performed by defendants' expert, if any, was for copying or imaging as opposed to other services.  *See id.* at 780 (adopting limited definition of copying applied in *Race Tires*, with caveat that costs of imaging metadata and hard drives are included for reasons stated well in *Colosi* and *CBT Flint*); *Wisconsin Alumni Rsch. Found. v. Apple, Inc.*, 261 F. Supp. 3d 900, 926 (W.D. Wis. 2017), *aff'd in part, rev'd in part*, 905 F.3d 1341 (Fed. Cir. 2018) (relying on *Split Pivot* in awarding costs only for copying of electronic data, including metadata and hard drives, and not data storage).  By defendants' own admission, the $4,999 fee seems to include time spent analyzing the metadata, which is not recoverable as a cost for copying under the approach adopted by this court and other circuits.  *See Sterling Nat'l Bank v. Block*, 984 F.3d 1210, 1227

12

(7th Cir. 2021) (citing *Race Tires*, 674 F.3d at 167; *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009)) (noting in dicta that collecting, preserving, processing, indexing, and keyword searching ESI have been excluded from taxable costs).

Moreover, in an order entered on October 9, 2020, Judge Crabb directed plaintiffs to produce to defendants the forensic copies of their licensing document files, along with the necessary metadata, made by their expert.  (Dkt. #85 at 4-5.)  Given that defendants already had a copy of the relevant computer files and metadata, it would appear that further imaging was not required and that the fees charged by defendants' expert were for time spent analyzing the data.  Accordingly, the court sustains plaintiffs' objection as to these costs.


ORDER

IT IS ORDERED that defendants' motion for attorney's fees (dkt. #171) is GRANTED and defendants' bill of costs (dkt. #174) is GRANTED IN PART AND DENIED IN PART consistent with this opinion.  Defendants are awarded attorney's fees and travel costs in the amount of $24,175.25, as well as grant in part and deny in part defendants' bill of costs in the amount of $2,166.30 in costs, for a total award of $26,341.55.

Entered this 19th day of July, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge